kaw

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   **Case No. 07-2577-JAR** |
| COLLECTIVE BRANDS, INC.(FKA PAYLESS SHOESOURCE, INC.), PAYLESS SHOESOURCE WORLDWIDE, INC., and COLLECTIVE LICENSING INTERNATIONAL, LLC., | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER

The Court now considers defendants' Collective Brands, Inc. ("CB"), Payless

ShoeSource Worldwide, Inc. ("Payless"), and Collective Licensing International, LLC's ("CLI")

Motion to Dismiss or Stay Action (Doc. 15).  For the reasons explained in detail below,

defendants' motion is denied.

## I.      Background

Beginning on August 12, 2003, Payless commenced a License Agreement with Airwalk

International ("Airwalk").  Airwalk granted to Payless a non-exclusive license to use in the

manufacture, distribution, sale, and promotion of the Airwalk brand and products.  The License

Agreement provides that licensee, here Payless, agrees to indemnify licensor, Airwalk, for any

claims and damages for which the indemnified party may become liable, including claims for

damages to intellectual property.  The License Agreement excludes claims arising "from the use

of the Licensed Trademarks or Footwear Designs in accordance with the terms and restrictions

of" the License Agreement.  The License Agreement also requires Payless to maintain a product liability insurance policy, of which Airwalk is to be listed as an additional insured, with respect to the licensed products, with a limit of no less than $3 million.  In December 2003, Airwalk, CLI, and Payless entered into an Consent to Assignment wherein Payless assigned the License Agreement to CLI.

Complicating matters is the fact that defendants CB, CLI, and Payless are corporate affiliates.  Payless is a wholly-owned subsidiary of CB.  CLI is a wholly-owned subsidiary of another corporation, Collective International, which in turn is a wholly-owned subsidiary of CB. CLI is in the business of brand marketing, management, and global licensing.  It includes brands such as Vision Street Wear®, Lamar®, Sims®, and many more.  The brand at issue in this case is Airwalk®.  CLI owns Airwalk, which it manufactures in China for importation and distribution in the United States.  On March 6, 2007, Payless signed an agreement with Collective Partners, LLC, Sunrise Capital Partners, L.P., and Lifestyle Brands, Ltd. to acquire the remaining interest in Collective International, the parent of CLI.  Thus, Collective International became a wholly-owned subsidiary of Payless.

Plaintiff Discover Property and Casualty Insurance Company ("Discover") seeks a declaratory judgment that Discover has no duty to defend or indemnify any of the defendants or their affiliated companies for defense costs or expenses associated with the Crocs United States International Trade Commission Infringement Proceeding or the Crocs United States District Court Infringement lawsuit.

Discover, an Illinois insurance company with its principal place of business in Connecticut, provided two commercial liability insurance policies to defendant Payless and CB:

2

(1)Policy D002Q00102, valid from December 1, 2004 at 12:01 AM to December 1, 2005 at 12:01 AM; and (2) Policy D002Q00123, valid from December 1, 2005 at 12:01 AM to December 1, 2006 at 12:01 AM ("Policies").  Under those Policies, CB, Payless, and their affiliates are named as insureds.  CLI, however, is not named as an insured.  The Policies provide the named insureds with personal and advertising injury insurance coverage with a $1 million policy limit, a $1 million per occurrence limit, and a self-insured retention of $1 million.

The Policies' coverage section provides that Discover "will pay the 'ultimate net loss'[1] in excess of the 'self-insured retention'[2] because of 'personal and advertising injury'[3] to which this insurance applies."  The Policies further state that the insurance applies to "'personal and advertising injury' caused by an offense arising out of your business, but only if the offense was committed in the 'coverage territory' during policy period."  The Policies exclude from coverage personal and advertising injury:

> (1) [c]aused by or at the direction of the insured with the
> knowledge that the act would violate the rights of another and

---

[1]"Ultimate net loss" means the sum of the amount the insured becomes legally obligated to pay as damages and the "claim expenses" associated with those damages.  "Claim expenses" means payments allocated to the a claim or suit, including "[a]ttorneys fees and all other litigation expenses . . .[,] reasonable expenses incurred by the insured in the investigation or defense of the claim . . .[,] costs taxed against the insured . . .[, and] [p]re-judgment interest awarded against the insured . . . ."  Claim expenses does not include "[s]alaries and expenses of [Discover's] employees or the insured's employees" other than for attorneys, and "[f]ees and expenses of independent claims adjusting organizations hired by" the insured.  "Suit" "means a civil proceeding in which damages because of . . . 'personal and advertising injury' to which this insurance applies are alleged."  *See* Policy D002Q00102, Section IV-Definitions, 12& Common Policy Definitions, D (Doc. 1-5).

[2]"Self-insured retention" "means the amount shown in the Declarations you must pay under the Coverage A and Coverage B for 'ultimate net loss' because of all 'bodily injury', [sic] 'property damage' or 'personal and advertising injury' arising out of the same 'incident' before [Discover's] obligation to begin payment commences."  *See* Policy D002Q00102, Section IV-Definitions, 10 (Doc. 1-5).

[3]"Personal and advertising injury" is "injury, including consequential 'bodily injury',[sic] arising out of one or more of . . . [t]he use of another's advertising idea in your 'advertisement';[sic] or [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement'."[sic] *See* Policy D002Q00102, Common Policy Definitions, H (Doc. 1-5).

would inflict "personal and advertising injury"; [sic] (2) [a]rising
out of oral or written publication of material, if done by or at the
direction of the insured with knowledge of its falsity; (3) [a]rising
out of oral or written publication of material whose first
publication took place before the beginning of the policy period;
[and] (4) [a]rising out of criminal act committed by or at the
direction of any insured . . . .

On March 31, 2006, Crocs, Inc. ("Crocs") filed an action with the United States

International Trade Commission ("ITC") under section 337 of the Tariff Act of 1930,[4] claiming

that CLI had imported for sale foam footwear into the United States in violation of Crocs's 858

and 789 Patents.[5]  The complaint further alleges that CLI began selling the allegedly infringing

footwear in February 2005, marketing it as Airwalk and that CLI copied the Crocs Trade Dress[6]

with the intent to use the goodwill of Crocs to sell its product.  This latter allegation was

withdrawn by Crocs and the ITC formally terminated the investigation on that issue.  Crocs

continues to seek an order from the ITC prohibiting CLI from importing and selling the allegedly

infringing footwear in the United States and from being sold for exportation to other countries.

The Administrative Law Judge has issued an order against Crocs, finding that the 858 Patent was

invalid due to obviousness, and that CLI/Payless did not infringe Crocs's 789 Patent.  Crocs has

appealed the decision to the ITC.

In addition to filing an action with the ITC, Crocs filed an action in the District Court for

the District of Colorado on April 3, 2006.[7]  In that action, Crocs alleges that CLI and others

---

[4]19 U.S.C. § 1337.

[5]Crocs's patents include United States Patent No. 6,993,858 B2 and No. D517,789.

[6]The Crocs Trade Dress is an image produced by Crocs footwear "'typically characterized as colorful foam clogs with a sporty European design.'" (Doc. 5)

[7]*Crocs, Inc. v. Acme EX-IM, Inc., et. al.*, No. 06-CV-00605 (Apr. 3, 2006).

infringed upon its 858 and 759 Patents, infringed on Crocs Trade Dress, violated Colorado consumer protection statutes, and unfairly competed with Crocs by "knowingly and purposefully import[ing] infringing products . . . that are distributed throughout the United States . . . ."  The complaint in the District Court action alleges that CLI and others, without authority, imitated the Crocs Trade Dress by trading on Crocs's goodwill and success, resulting in high volume sales. The complaint alleges that CLI willfully and in bad faith infringed 858 and 789 Patents.  The complaint goes on to allege that CLI has sold merchandise that infringes on the Crocs Trade Dress and constitutes a false representation of origin, and that such conduct constitutes deceptive practices under the Colorado Consumer Protection Act.[8]  Crocs alleges that CLI has willfully and in bad faith engaged in deceptive trade practices to injure Crocs, and that this activity is unfair competition.  The action before the District Court of Colorado has been stayed pending resolution of the action before the ITC.  CB and Payless are not named in the action before the District Court or the ITC.

On April 12, 2006, CLI notified Payless that it had been named a defendant in the proceeding before the ITC and the District Court of Colorado.  CLI demanded that Payless and CB, pursuant to the License Agreement and Consent Assignment, provide a defense and indemnify it as to any judgment.  On April 13, 2006, Payless notified Discover that it required indemnification for the accumulating attorneys fees and defense it has provided to CLI in the pending actions before the ITC and the Colorado District Court.  Payless asserts that the Licensing Agreement obligates it to indemnify CLI, and as a result, Discover is obligated to indemnify Payless.  Discover has refused to provide any coverage and the parties have been

---

[8]Colo. Rev. Stat. §§ 6-1-101, et. seq.

deadlocked since.  In the resulting action before this Court, Discover seeks a declaratory judgment finding that it has no duty to defend or indemnify Payless for the costs incurred in defending CLI or affiliates for "any defense costs, investigative costs, court costs, settlement costs, judgments, or any other costs or expenses associated with or arising from the" ITC proceeding or the District of Colorado action.

## II.    Discussion

Defendants assert a number of reasons why this Court should dismiss or stay plaintiff's declaratory judgment action.  Defendants claim that the indemnification issues are not ripe for adjudication, and that there is no subject matter jurisdiction because plaintiff failed to join a necessary and indispensable party.  Alternatively, defendants contend that the Court should dismiss or stay the action under the Declaratory Judgment Act ("DJA"), or stay the action pursuant to 28 U.S.C. § 1659.  The Court will discuss each argument in turn.

The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face,"[9] or when an issue of law is dispositive.[10]  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice.[11]  The court must accept the facts alleged in the complaint as true, even if doubtful in fact,[12] and view

---

[9]*Bell Atlantic Corp. v. Twombly*, —U.S.—, 127 S.Ct. 1955, 1974 (2007); *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

[10]*Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

[11]*Twombly*, 127 S.Ct. at 1964-65.

[12]*Id.* at 1965.

all reasonable inferences from those facts in favor of the plaintiff.[13]  Viewed as such, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level."[14]  The

issue in resolving such a motion is "not whether [the] plaintiff will ultimately prevail, but

whether the claimant is entitled to offer evidence to support the claims."[15]

### A.    Ripeness

Article III's case and controversy requirement of the United States Constitution cautions

courts to not engage in abstract and premature adjudications.[16]  One of the doctrines that enables

this constitutional mandate is the doctrine of  ripeness, which requires controversies to be

presented in "clean-cut and concrete form."[17]  This inquiry focuses on whether the plaintiff's

harm has "matured sufficiently to warrant judicial intervention."[18]  When considering whether a

claim is ripe for adjudication, the Court must consider a two-part test evaluating the "fitness of

the issue for judicial resolution and . . . the hardship to the parties of withholding judicial

consideration."[19]  When considering the fitness prong, the Court must ask "'whether the case

involves uncertain or contingent future events that may not occur as anticipated, or indeed may

---

[13]*Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

[14]*Twombly*, 127 S.Ct. at 1965 (citations omitted).

[15]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[16]*U.S. West Inc. v. Tristani*, 182 F.3d 1202, 1208 (10th Cir. 1999) (quoting *Keyes v. School Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1443 (10th Cir. 1997)).

[17]*Id.* (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)).

[18]*Kansas Judicial Review v. Stout*, 513 F.3d 1107, 1116 (10th Cir. 2008) (quoting *Renne v. Geary*, 501 U.S. 312, 322 (1991)).

[19]*U.S. West Inc.*, 182 F.3d at 1208 (citing *New Mexicans for Bill Richardson*, 64 F.3d at 1499).

not occur at all.'"[20]   However, "'the contingent nature of the right or obligation in controversy will not bar a litigant from seeking declaratory relief when the circumstances reveal a need for present adjudication.'"[21]   The hardship prong requires the Court to ask "'whether the challenged action creates a direct and immediate dilemma for the parties.'"[22]

Defendants argue that the issues before the Court are not fit for adjudication because they are indemnification issues, and "the law is well-settled that indemnification issues are not ripe for adjudication until the underlying suit for damages has been resolved."  Defendants contend that plaintiff's arguments presuppose that the patents at issue are valid and have been infringed. Plaintiff, on the other hand, argues that whether it should indemnify defendants based on the Licensing Agreement is separate and apart from any issues before the District of Colorado or the ITC.  Discover notes that the issues of indemnification under the License Agreement can be determined by looking to the License Agreement and issues of coverage can be distilled by looking to the District of Colorado complaint and comparing it to the language in the Policies.

It seems to the Court that there are two issues of indemnification.  One issue is whether the Policies cover the alleged infringement by CLI.  Another is whether Discover is obligated to reimburse the excess attorney's fees above the $1 million retention in the Policies.  The Court will discuss the infringement issue first.

Defendants cite to *Park University Enterprises, Inc. v. American Casualty Co. of*

---

[20]*Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (quoting *New Mexicans for Bill Richardson*, 64 F.3d at 1499)).

[21]*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL, 2006 WL 1007099, at *2 (D. Kan. Apr. 14, 2006).

[22]*Morgan*, 365 F.3d at 890.

*Reading, PA*, arguing that indemnification issues are not ripe for adjudication where the underlying issues of liability are unresolved.[23]  Discover, however, cites to *Youell v. Grimes*, in which Judge Lungstrum stated that declaratory judgments are sometimes proper "where an insurer seeks a declaration that it will not be liable to indemnify an insured for any damages."[24] In conjunction with a provision in the Policies that excludes from coverage the intentional acts of the insured, Discover argues that the allegations in the Complaint are sufficient for the Court to decide whether the alleged infringement is covered by the Policies.

In *Park University*, as Discover notes, plaintiff conceded that the indemnification issues were not ripe for adjudication.[25]  In that the case, the court dismissed the action because there was no case or controversy.[26]  In *Youell*, however, the court concluded that a "[d]eclaratory judgment on the underwriters' liability under the insurance contract . . . [was] appropriate even without a judgment against" the insured.[27]  Defendants contend that *Youell* is not analogous because there was no underlying case dealing with the same issues pending before another tribunal.  Defendants' argument, however, is more suited to why the Court should not exercise its discretion under the Declaratory Judgment Act, not whether the action is ripe for consideration.   In any event, Discover's view prevails, and this Court concludes that the coverage issues are ripe for adjudication.

Defendants still argue that resolving the issues in this case would intrude upon the other

---

[23]No. 03-2522-KHV, slip op. at *2 (D. Kan. July 7, 2006).

[24]No. 00-2207-JWL, 2002 WL 121955, at * 3 (D. Kan. Feb. 8, 2001).

[25]No. 03-2522-KHV, slip op. at *3.

[26]*Id.* at *2.

[27]*Youell*, 2002 WL 121955, at *3.

tribunals' efforts in resolving the pending actions.  Again, defendants' arguments miss the mark. There is no uncertainty in resolving the coverage issues.  It is clear from the reading of the License Agreement and the Policies that they do not provide coverage for intentional acts.  The License Agreement excludes the licensee from indemnifying licensor for "any claims arising directly from use of the Licensed Trademarks or Footwear Designs in accordance with the terms and restrictions of the" License Agreement.  The Policies exclude from coverage personal and advertising injury "caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"  As Discover notes, there would be no need to resolve the issues before the ITC or the Colorado District Court; rather, the Court need only decide whether, as alleged in Crocs's complaint, Discover must indemnify defendants for the "Advertising Injury" alleged.[28]

The claims pending before the ITC and Colorado District Court are entirely separate from the claims before this Court; those tribunals must determine whether there was some type of infringement to Crocs's patents and sales dress, whereas this Court would have to determine whether Discover's Policies provide coverage for the acts alleged by Crocs.  Moreover, the Court must view the allegations in the light most favorable to the plaintiff.[29]   Accordingly, if Crocs's complaint "alleges only acts that are clearly not covered by the policy, then a declaratory judgment action is proper to determine the issue of coverage."[30]

---

[28]The Court is aware that it would also have to determine whether CLI was an insured under the Policies. Though that issue is ripe at the moment, determining the coverage issues and whether CLI is an insured would be futile if the Crocs's District of Colorado action is amended to include Payless.

[29]*Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

[30]*Am. Ins., Co. v. Powers*, No. 02-2403-JWL, 2003 WL 194594, at *2 (D. Kan. Jan. 21, 2003).

Whether Discover is obligated to reimburse the accumulated attorney's fees beyond the $1 million retention in the Policies is fit for adjudication. Section 15.2 of the License Agreement provides that "Licensee agrees to defend . . . Licensor . . . in respect to any and all actions . . . and all costs and expenses (including, without limitation, reasonable attorney's and experts' fees and expenses and costs associated therewith), which the Indemnified Parties may sustain . . . ." Currently, CLI has surpassed the $1 million retention cap and has requested a defense based on the License Agreement and the Policies, arguably activating Discover's obligation to defend.

Defendants argue that because the Colorado suit is stayed, there are currently no attorney's fees accruing. Moreover, adjudicating whether Discover is obligated to reimburse the attorney's fees is premature, depending on the outcome in the ITC and District of Colorado proceedings. Namely, defendants argue, the likelihood that Crocs will amend its complaint in the Colorado District Court shows the futility of any adjudication on the issue. Discover denounces defendants' arguments and asserts that the Court could establish whether there is a duty to defend by simply looking to the Policies and the District of Colorado complaint. Discover is correct on this point.[31] Indeed, defendants have requested that Discover pay certain amounts in attorney's fees even though the District of Colorado case is stayed and no attorney's fees are accumulating. It can hardly be argued that there is no controversy when defendants have requested that Discover reimburse over $1 million in attorney's fees. As such, the Court is convinced that the issue of reimbursement for defense and for continued attorney's fees beyond the $1 million retention is ripe for adjudication.

---

[31] *See Advantage Homebuilding, LLC v. Maryland Cas. Co.*, 470 F.3d 1003, 1007 (10th Cir. 2006) ( insurer has a duty to defend "if, based on the pleadings and any facts brought to the insurer's attention or reasonably discoverable during the insurance investigation, there is a potential for liability.").

Defendants argue that there is no hardship to Discover in resolving the defense issue now because the proceeding before the District of Colorado is stayed.  The Court disagrees. Although the proceeding is stayed, there is still an accumulation of interest on the amount allegedly owed.  Requiring Discover to wait, as it notes, would be prejudicial because of the uncertainty of when the issues will be resolved in the District of Colorado case.  Moreover, there is an accumulation of attorney's fees for the ITC proceeding, which continues to develop and change.

Defendants suggest that *Morgan v. McCotter*,[32] in which the court held that the issue was not ripe, is similar to the case hand.  This Court disagrees.  After a career in law enforcement, plaintiff Morgan was appointed Deputy Director of Utah Department of Corrections, a position that was not classified as a "career service employee."[33]  Career service employees are tenured employees with a statutory property interest in their employment.[34]  A career service employee has the right to certain procedures before termination and the right to appeal to an independent body after termination.[35]  Because plaintiff had achieved career service status, he had priority for reassignment to a comparable position when one was available.[36]  Plaintiff was terminated but did not seek a comparable position within the government.[37]  At trial, plaintiff argued that he had a property interest in his right to be reassigned to a similar position, and the loss of his position

---

[32]365 F.3d 882 (10th Cir. 2004).

[33]*Id.* at 885.

[34]*Id.*

[35]*Id.*

[36]*Id.*

[37]*Id.*

as deputy Director resulted in the loss of his priority for reassignment without due process of law.[38]  The court concluded that there was no "'direct and immediate dilemma for the parties'"[39] because plaintiff had not requested a position in the public service sector similar to his position.[40]

Here, unlike *Morgan*, there is a direct dilemma because defendants have requested that Discover pay certain amounts above the $1 million retention cap in the Policies.  In addition, while Morgan did not request a similar position or seem to have any interest in returning to work in the public sector, defendants have already stated their positions for requesting the amount of attorney's fees and costs.  As such, defendants cannot argue that the defense issue is not ripe.

### B.    Failure to Join a Necessary and Indispensable Non-diverse Party

Defendants argue that there is another reason this Court lacks jurisdiction—Discover's failure to join a necessary and indispensable party.  Defendants contend that Zurich American Insurance Company[41] is a necessary and indispensable party; with its principal place of business in Illinois, the same state as Discover, joining Zurich destroys diversity jurisdiction.

Rule 19 of the Federal Rules of Civil Procedure "provides a three-step process for determining whether an action should be dismissed for failure to join a purportedly indispensable

---

[38]*Id.* at 886.

[39]*Id.* at 891 (citing *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)).

[40]*Id.*

[41]Discover's Policies terminated on February 1, 2006, the same date that Zurich's policies went into effect.  Zurich's policies continued through February 1, 2008.  Both insurers' policies provide coverage for "personal advertising injury."

13

party."[42]  First, the court must determine whether a party is necessary under Rule 19(a).[43]  If so, the court must determine whether joinder of the party is feasible, and if not, whether the party is indispensable under Rule 19(b); namely, whether in equity and good conscience the action can continue in the party's absence.[44]

Under Rule 19(a)(1):

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.[45]

Under Rule 19(a)(1)(A), defendants assert that complete relief cannot be accorded unless Zurich is added because Payless cannot obtain adjudication of Zurich's liability.  Rule 19(a)(1)(B) is satisfied because if Discover's view prevails, Zurich's ability to assert that its policies exclude "first publication"[46] would be impaired.  Discover, on the other hand, cites to

---

[42]*Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001) (citing *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999)).

[43]*Id.*

[44]*Id.*

[45]Fed. R. Civ. P. 19(a)(1)(A)-(B)(i-ii).

[46]This provision in the Zurich policies exclude from coverage "'personal and advertising injury' arising out of oral and written publication of material whose first publication took place before the beginning of the policy period."

*Babb v. Mid-America Auto Exchange*[47] and *Salt Lake Tribune Publishing Co. v. AT&T*,[48] in support of its position that Zurich is not needed to accord it and defendants complete relief because the Court need only interpret Discover's Policies, and any subsequent policies held by Zurich on behalf of defendants is not relevant to the issues in this action.

In *Salt Lake Tribune*, the court found that Desert News was not a necessary party because its absence would not prevent plaintiff from obtaining complete relief.[49]  The court reasoned that it could simply fashion a remedy in accordance with the court's equitable powers or simply award damages for breach of contract.[50]  In addition, the court found that fashioning a remedy that does not impair Desert News's ability to protect its interests or to be free from inconsistent or multiple obligations could easily be completed.[51]  In *Babb*, the court concluded that joint tortfeasors are not necessary parties where defendants, if found liable, would seek indemnification or contribution.[52]

In this case, Zurich is not a necessary party, therefore, it cannot be an indispensable party.  This case is similar to *Salt Lake Tribune* in that this Court need only interpret Discover's Policies to fashion a remedy for Discover.  Defendants' view that the Court would not be able to fashion a remedy for Zurich because Zurich is not present in the litigation misses the point.  It is not a remedy for Zurich that is sought, but one for Discover.  Nonetheless, Zurich's remedies are

---

[47]No. 06-2230-CM, 2006 WL 2714273 (D. Kan. Sept. 22, 2006).

[48]320 F.3d 1081 (10th Cir. 2003).

[49]*Id.* at 1097.

[50]*Id.*

[51]*Id.* at 1097-98.

[52]*Babb*, 2006 WL 2714273, at *2.

15

still available, assuming that the positions laid out by defendants are Zurich's positions.  Zurich can still move for a declaration that its policies do not provide coverage for certain exclusions and still argue that its policies do not provide coverage for the allegations by Crocs.  Yet defendants still argue that if Zurich is not made a party, Payless could be left without coverage for the allegations by Crocs.  Again, this is of no relevance to the issue of whether Zurich is a necessary party.  Simply put, if Zurich's policies and Discover's Policies exclude certain actions from coverage, then defendants will not be covered.  Here, simply interpreting whether Discover's Policies provide coverage does not leave Zurich without grounds to argue that its policies do not provide coverage either.

As Zurich is not a necessary party, there is no need to move on to the second prong, whether Zurich is an indispensable party.

### C.    Discretionary Dismissal or Stay under Declaratory Judgment Act

Defendants' final argument is that the Court should stay the proceedings pursuant to the Declaratory Judgment Act.  The Declaratory Judgment Act, 28 U.S.C. § 2201, gives the federal courts authorization "to make a declaration of rights; it did not impose a duty to do so."[53] "Whether to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the court."[54]  Generally, a federal court should not "entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."[55]  Similarly, 28 U.S.C. § 1659 requires a court to stay a

---

[53]*Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989) (quoting *Pub. Affairs Assoc., Inc., v. Rickover*, 369 U.S. 111, 112 (1962)).

[54]*Id.* (citing *Ala. State Fed'n of Labor v. McAdory*, 325 U.S. 450, 462 (1945)).

[55]*Id.* at 1276 (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)).

16

civil action if a proceeding involving the same parties and same issues is pending before the ITC, allowing the ITC to determine the issues and avoid duplicative proceedings.[56]  Therefore, under the Declaratory Judgment Act and the policy of § 1659, a dismissal or stay is appropriate when the parties of the declaratory judgment action are also parties to another suit involving the same issues.

Defendants liken this case to *Cellco Partnership v. Broadband*,[57] in which the Federal Circuit found that the district court did not abuse its discretion by staying the proceedings pending resolution of the validity of certain patents before the ITC.[58]  The district court found that the proceedings raised many of the same issues before the ITC, including the patent issues.[59]

Discover cites to *American States Insurance Co. v. Powers*,[60] claiming that this case is more analogous.  The Court again agrees with Discover.  In *Powers*, plaintiffs contracted with Powers to build a building.[61]  After completion of the building, plaintiffs sued Powers, claiming breach of contract, negligence, fraud, and misrepresentation.[62]  Powers's insurance provider, American States Insurance Company, defended Powers with reservation of rights.[63]  In a separate proceeding, American filed a declaratory judgment action seeking a declaration that its policy

---

[56]*In re Princo Corp.*, 478 F.3d 1345, 1356 (Fed. Cir. 2007).

[57]227 Fed. App'x 889, 890 (Fed. Cir. 2007).

[58]*Id.*

[59]*Id.*

[60]No. 02-2403-JWL, 2003 WL 194594 (D. Kan. Jan. 21, 2003).

[61]*Id.* at *1.

[62]*Id.*

[63]*Id.*

17

did not provide coverage and that it had no duty to defend.[64]  The court concluded that the declaratory action was proper because there is "simply no potential for liability under the policy issued to Mr. Powers and the facts alleged by the [plaintiffs] in the underlying action."[65]  Citing *State Farm & Casualy Co. v. Finney*,[66] the court found that "in determining whether there is a 'potential for liability,' the insurer must examine the allegations in the complaint; for if the complaint alleges only acts that are clearly not covered by the policy, then a declaratory judgment action is proper to determine the issue of coverage."[67]

Without prejudging the action, the Court notes that the complaint in the District of Colorado case makes a number of allegations, including that defendants "knowingly and purposefully" imported infringing products, that defendants' infringement of the patents is willful, and that defendants engaged in this activity to intentionally injure Crocs.  The Policies at issue exclude from coverage personal and advertising injury "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another. . . ."  In this case, the Court can simply interpret the Policies at issue, including an analysis of the District of Colorado complaint.  As such, a stay under the Declaratory Judgment Act or § 1659 is not appropriate.

### D.      Motion for Attorney's Fees

Defendants also seek attorney's fees, claiming that Kansas law provides that when an

---

[64]*Id.*

[65]*Id.* at *2.

[66]244 Kan. 545, 553-54, 770 P.2d 460 (1989).

[67]*Powers*, 2003 WL 194594, at *2 (citing *Finney*, 244 Kan. at 553-54).

insurer files a declaratory action against an insured and loses, it is required to pay attorney's fees.  This request is denied as premature because Discover has neither lost its declaratory action nor has the Court dismissed or stayed the action.

       **IT IS THEREFORE ORDERED BY THE COURT** that defendants' Collective Brands, Inc., Payless ShoeSource Worldwide, Inc., and Collective Licensing International, LLC's Motion to Dismiss or Stay Action (Doc. 15) is DENIED.

       **IT IS SO ORDERED.**

       Dated this 15th day of July 2008.


                                       S/ Julie A. Robinson
                                        Julie A. Robinson
                                        United States District Judge